UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:20CV-P593-JHM

**JAMES WALTON PARRISH, JR.**                                                             **PLAINTIFF**

**v.**

**LOUISVILLE METRO DEPARTMENT
OF CORRECTIONS** *et al.*                                                         **DEFENDANTS**

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motions for summary judgment filed by Defendant Dr. Smith (DN 92) and Defendant Louisville Metro Government (LMG). (DN 95). Proceeding *pro se*, Plaintiff James Walton Parrish, Jr., filed a response to Defendant Smith's motion (DN 106) and a "motion to deny summary judgment" directed at LMG's motion (DN 107), which the Court will construe as a response to LMG's motion for summary judgment. Defendants each filed a reply. (DNs 108 and 109). For the reasons that follow, Defendants' motions for summary judgment will be granted, and all other pending motions will be denied as moot.

**I**.

Plaintiff was incarcerated at the Louisville Metro Department of Corrections (LMDC) at the time pertinent to the events. He filed his original 42 U.S.C. § 1983 prisoner civil rights complaint, signed under penalty of perjury, on August 18, 2020.[1] Plaintiff sued "[LMDC] and Staff"; Dr. Smith, who he identified as a doctor at LMDC; and five other personnel at LMDC in their official capacities only.

---

[1] Under the mailbox rule, a prisoner's pleading is deemed filed when presented to prison officials for mailing. *Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).

In the complaint, Plaintiff stated, "Since July 28th of 2019, I . . . have tried to seek medical aid with my Blurry vision and severe headackes." He asserted, "When I finally was able to see Dr. Smith in August of 2019 Dr. Smith told me you would most likely need glasses. But he said the policy here is you need to have 250.00 dollars on your jail account to pay for exam and glasses." Plaintiff further stated, "This policy which is not in the inmate handbook has been used to keep me in pain so that I can not even read a newspaper or book without a headacke. Makes it difficult to try and watch TV or write a letter to friends or family." He also reported that "in the inmate handbook page 24 all inmates access to healthcare will not be precluded by inability to pay." Plaintiff alleged violations of the Fifth, Eighth, and Fourteenth Amendments and violation of the inmate handbook.

Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Eighth Amendment[2] claim based on the denial of prescription eye glasses to proceed against Defendant LMG. (DN 13). It also dismissed Plaintiff's official-capacity claims as redundant to the continuing claim against Defendant LMG; gave Plaintiff the opportunity to file an amended complaint to sue Defendant Smith in his individual capacity; and dismissed all other claims.

Plaintiff then filed an amended complaint. (DN 20). Plaintiff indicated that he wished to sue Defendant Smith in his individual capacity. He attached documents which he stated showed "a clear pattern of non medical treatment and the continued pain and suffering endured in my

---

[2] Plaintiff listed himself as a convicted inmate in both the complaint and amended complaint, and the Court therefore construed Plaintiff's claims as brought under the Eighth Amendment. *See Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) ("[T]he Eighth Amendment applies only to those convicted of crimes. . . . [P]retrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment.") (internal citations and quotation marks omitted). However, Defendants point out that Plaintiff may have been a pretrial detainee for some of the time period when he was incarcerated at LMDC, in which case his claims would be brought under the Fourteenth Amendment. *Id.* Because the Court will grant summary judgment on the exhaustion issue, the Court need not determine which of these standards applies.

incarceration at [LMDC] while not supplying glasses or corrective eyewhere." Plaintiff also alleged denial of access to the courts and alleged "that Louisville Metro Government and it's employees deliberately harrassed me at every chance to properly defend myself in Court or while trying to follow LMDC guidelines in there own manule that they themselves never followed." He also increased the amount of damages he was seeking.

Upon initial review of the amended complaint, the Court allowed Plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-needs claim to procced against Defendant Smith in his individual capacity based on Plaintiff's allegations that Defendant Smith denied his request for eyeglasses and dismissed all other claims asserted in the amended complaint. (DN 22).

## II.

### A.

In their motions for summary judgment, Defendants ague that Plaintiff did not fully exhaust available administrative remedies pursuant to LMDC's grievance policy before filing suit as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).[3] Defendants point to the following grievances which were arguably related to Plaintiff's vision and/or request for eyeglasses:

(1) Plaintiff filed Grievance Number J34A on January 8, 2020, in which he asks for the "standard operating procedure for getting glasses because I can not see and I am getting head ackes from it." (DN 80-3, PageID.450). The grievance was marked with an "R" which indicated that it was "Resolved" on March 4, 2020, with a response stating, "You must complete an Open Records Request for this information." (*Id.*)

---

[3] Both Defendants also argue that they are entitled to summary judgment on the merits of Plaintiff's claims. Since the Court will dismiss the complaint for failure to exhaust administrative remedies, the Court will not address Defendants' arguments based on the merits.

(2) Plaintiff filed Grievance Number 6682 on January 14, 2020, in which he complained that doctors at LMDC had stripped him of "the medication he needs to function without pain and blurry vision with an A1C level of over 8." (DN 92-2, PageID.649). That grievance was denied as unfounded on February 14, 2020. (*Id.*, PageID.652). The response stated, "The Nurse Practitioner tried to see you twice and you refused the visit. They will attempt to see you again." (*Id.*)

(3) Plaintiff submitted Grievance Number 6810 on April 24, 2020, in which he complained that he "has been getting headaches lately and have written numerous [Health Service Requests] [(]HSRs[)] about this matter. Inmate alleges his vision is blurry and getting aspirin or Ibuprofen is not working." (*Id.*, PageID.634). He requested to see a doctor for his blurry vision and migraines. (*Id.*) That grievance was rejected as unfounded. (*Id.*, PageID.634). The response stated, "You have been refusing your accuchecks and metformin frequently. You have also refused your labs." (*Id.*, PageID.638). It further stated, "I have notified the provider of your concerns so that you can be placed on the list to be seen. She has ordered blood pressure checks as well. Please allow accuchecks to be done and take your medications as ordered." (*Id.*)

(4) Plaintiff submitted Grievance Number 6932 on July 20, 2020. (*Id.*, PageID.629). The grievance note states, "Inmate alleges he has blurred vision, mood swings, headaches and cold chills. Inmate alleges he needs to know what his A1-C results are." (*Id.*) That grievance was denied as unfounded on July 30, 2020. (*Id.*, PageID.632). In response, it was noted "You were seen by the Provider 7/22/20." (*Id.*, PageID.633).

(5) Plaintiff filed Grievance Number 6961 on July 28, 2020. (*Id.*, PageID.620). He stated that he had submitted multiple [HSRs] that had not been addressed, including for "blurry vision, headaches, two toenails of being at risk of infections since he is a diabetic, being allergic to onions

4

and tomatoes and any food containing them, and his feet are drying out and cracking." (*Id.*). That grievance also was denied as unfounded on August 18, 2020. (*Id.*, PageID.623). The grievance response stated, "You have been seen by nursing staff for the blurry vision and were informed that you could be supplied glasses or reader glasses." (*Id.*, PageID.624).

(6) Plaintiff submitted Grievance No. 7046 on October 7, 2020, wherein he grieved the following:

> Inmate alleges that he spoke with Dr. Smith and he asked him questions about an eye exam that another doctor set him up for. Inmate alleges that Dr. Smith stated that someone will look at it and get back to him. Inmate alleges that he has been another month and still no word back or eye exam that other doctor set him up for. Inmate alleges that he has had caseworkers send medical emails and he has submitted HSR's and still no help. Inmate is requesting to see medical about his eye ex[am].

(*Id.*, PageID.591). That grievance was denied as unfounded on October 14, 2020. (*Id.*, PageID.594). The grievance response states, "You saw the provider on 9/28/20. I will email him about this concern." (*Id.*, PageID.594).

Defendants Smith and LMG argue that Plaintiff failed to appeal the resolution of any the above grievances which were denied. They both cite the affidavit of Charlene Bell, who avers that she is "the person responsible for grievances for the [LMDC]." (DN 95-2, PageID.819). She states that she reviewed the grievances filed by Plaintiff pertaining to his complaints regarding blurry vision and requests for an eye exam and glasses. (*Id.*) Bell avers the following:

> [Plaintiff] did not exhaust his administrative remedies with respect to any of the grievances he cites because: 1) he did [not] escalate any of them to the next level of review if he did not receive a timely response in accordance with the LMDC Grievance Policy; and/or 2) he did not appeal the denial of any of the grievances he cites once they were denied; and 3) the time period for him to pursue either of those mandatory remedies under the LMDC Grievance Policy has expired.

(*Id.*)

Therefore, Defendants argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust.

**B.**

After Plaintiff failed to file a response to either Defendant's dispositive motions, the Court entered an Order (DN 100) directing him to file a response to the motions. In that Order, the Court provided Plaintiff with general guidance in responding to a motion for summary judgment under Fed. R. Civ. P. 56 in accordance with *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003). In so doing, the Court instructed Plaintiff that he must support his facts with affidavits (his own statement or witness statements, either sworn or signed under penalty of perjury) and/or other documents contradicting the material facts asserted by Defendants. Otherwise, it stated, the Court may accept Defendants' facts as true and grant judgment in their favor.

Thereafter, Plaintiff filed two separate responses to the motions for summary judgment. However, the bulk of the responses are photocopies of the same document. Neither of them is signed under penalty of perjury. Much of Plaintiff's responses focus on what he believes to be improper treatment for his diabetes. Plaintiff complains that when he arrived at LMDC he told medical personnel that he was insulin-dependent but that medical personnel prescribed him an oral medication, which Plaintiff alleges was insufficient treatment.

With regard to the exhaustion argument, Plaintiff points to Grievance Numbers 6630, 6680, and 6681, which he filed in December 2019 and January 2020. Each of these grievances concern complaints about him not receiving prescription medication for his neuropathy. He states, "This proves they knew they had a problem and would work to fix it." He also maintains, "During this 3 months and three grievances I have not received no insulin and my sugar levels steadily rise my

hands and feet begin to hurt worse with the lack of neuropathy pain medication." He argues that he exhausted these grievances because they were deemed non-grievable or resolved and that the LMDC grievance procedures did not allow for Plaintiff to take additional steps to exhaust these grievances.

In his responses, Plaintiff also references Grievance Number 6682, which is summarized above. Plaintiff states that the grievance, in which he complained about needing medication for "pain and blurry vision," was rejected with the response, "Per policy - Grievance cannot contain vulgar/abusive language." (DN 106-6, PageID.932). He argues that no administrative remedy was available to him because this grievance was rejected as non-grievable. With regard to Grievance Numbers 6810, 6932, and 7046, each referenced above, Plaintiff states, "Plaintiff was trying to bring to there attention the same old same old was not working" and states that those grievances were "deemed Unfounded or Denied – Non Grievable issue which removes the exhaust remedies." He also suggests that at least one of the grievances "never came back to appeal it." He states, "No answer came to this grievance or reply so no exhaustion to the administrative process can begin." Plaintiff also argues that for Grievance Numbers J43A, 6682, and 6961, also summarized above, the responses to these grievances were not returned to him within the time limits set by LMDC grievance procedures and that he was therefore not required to exhaust his administrative remedies.

Plaintiff further asserts that "as this case went on and review of the grievances and speaking to medical staff" at the Kentucky Department of Corrections he now believes "that the poor vision and lack of glasses is connected to his poor treatment of his diabetes." Plaintiff reports that he received an eye exam and prescription glasses on October 21, 2020, approximately two months after he filed this action, but he states, "the permanent damage to plaintiff body has already been

done, by it further degrading his vision with the lack of eye wear for over a year, the lack of medical care for his pain due to diabetes, by the lack of treatment for his diabetes. These are all inner connected."

Plaintiff argues that he "has proven a steady but undeniable paper trail that this issue was constantly brought to their attention." He states, "The glasses, the neuropathy, and diabetic side effects are all related to a failure to treat plaintiff for being diabetic with insulin when plaintiff is a insulin dependent diabetic."

## C.

In reply, Defendant Smith argues that LMDC grievance policies require that an inmate specifically identify the staff involved when filing a grievance. He states that Plaintiff identified Smith in only one of his grievances, Grievance Number 7046, which was denied. Defendant Smith argues that Plaintiff does not demonstrate that he exhausted that grievance by appealing it in accordance with the LMDC grievance procedures and that he is entitled to summary judgment on this basis.

In Defendant LMG's reply, it argues that Plaintiff's claims should be limited to the denial of eyeglasses and not to the broader issue of alleged insufficient treatment for his diabetes overall. Defendant LMG maintains that he did not plead inadequate medical treatment for his diabetes in his complaint or amended complaint and does not even mention that he is diabetic in his pleadings. It argues that the Court conducted the 28 U.S.C. § 1915A initial review of the complaint and amended complaint and allowed Plaintiff's claims to proceed based on his allegations that he was denied eyeglasses; that Plaintiff did not raise his claims concerning his treatment for diabetes until he filed his pretrial memorandum nearly two years into this lawsuit; and that Plaintiff never moved to amend his complaint to raise claims concerning his treatment for diabetes overall.

Defendant LMG further argues that the record makes clear that Plaintiff never took any of his grievances through one complete round of the established administrative process. It maintains that Plaintiff's argument that LMDC was on "constructive notice" based on the grievances he filed is not supported by the case law. Defendant LMG states that, contrary to Plaintiff's argument that his grievances were rejected as non-grievable, none of his grievances were in fact rejected as non-grievable. It further maintains that, with regard to Plaintiff's argument that he received responses to his grievances late or did not receive responses to his grievances at all, he was still required to escalate an unanswered grievance to the next level of review under the LMDC grievance procedures. Thus, Defendant LMG argues that Plaintiff failed to exhaust his administrative remedies before filing suit, and that summary judgment should be entered.

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*,

9

477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted).

### IV.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Id.* at 216.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. at 532. To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines

and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established administrative process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. at 87. "[A]n inmate does not exhaust available administrative remedies . . . when the inmate filed such a grievance but 'did not appeal the denial of that complaint to the highest possible administrative level[.]" *Id.* (quoting *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). "'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Woodford v. Ngo*, 548 U.S. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). An inmate must demonstrate that he has exhausted all available administrative remedies; when he fails to do so, dismissal of the complaint is appropriate. *See, e.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).

The LMDC grievance procedures set forth the following: "A grievance about a specific incident is to be filed within five (5) working days after the incident occurs." (DN 95-1, PageID.814). "The grievance shall include all aspects of the issue that the grievant wants to be addressed and shall specifically identify the staff involved." (*Id.*). "The Grievance Counselor may reject a grievance that does not comply with the grievance process requirements. A written explanation shall be provided to the inmate concerning the reason for the rejection." (*Id.*, PageID.815). "After the grievance has been properly filed, an attempt to resolve the problem will be made through informal resolution means. This may involve the Grievance Counselor, department head or facility staff. The resolution stage will involve inquiries or discussions to attempt to resolve the grievance." (*Id.*). "Response to the grievance is to be within ten (10)

11

working days from receipt of the grievance unless special circumstances require additional attention." (*Id.*). "The inmate will have five (5) working days after the receipt of the resolution to decide whether to appeal to the next level." (*Id.*). "An inmate who does not receive a response within forty-five (45) days from the filing of the grievance shall be allowed to pursue his grievance to the next level of review (within five (5) working days). The inmate shall not be allowed to move to the next level of review if more than fifty (50) days have passed since the filing of the initial grievance." (*Id.*). "If the grievant is not satisfied with the outcome of the resolution response, they may appeal in writing to the Director/designee within five (5) working days after receipt of the resolution response." (*Id.*).

Defendants have established that LMDC had a grievance procedure in place and have established through Bell's affidavit and the grievance records produced by the parties that Plaintiff did not appeal the denial of any grievance or escalate to the next level any other grievance that may have been rejected or to which he did not receive a response. Upon review, the Court finds that Defendants have met their burden to establish that Plaintiff failed to exhaust his administrative remedies before filing this action.

The burden shifts to Plaintiff to produce specific facts supported by evidence demonstrating a genuine issue of fact for trial on the issue of exhaustion. Plaintiff has produced no evidence to show that he appealed any of the grievances he filed to the next level of review. Because Plaintiff did not sign his responses to the summary-judgment motions "under penalty of perjury," the responses do not carry the same weight as an affidavit or evidence. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).[4] In any event, the Court will address Plaintiff's arguments regarding exhaustion.

---

[4] Plaintiff raised similar arguments in his pretrial memorandum (DN 80), but it was also not signed under "penalty of perjury" and therefore does not carry the weight of an affidavit.

12

At the outset, Plaintiff now argues that his claims are not limited to denial of eyeglasses due to lack of funds in his prison trust account as stated in the complaint and amended complaint. He now asserts claims based on the alleged inadequate treatment for his diabetes overall, including his disagreement with the decision by LMDC medical staff to put him on oral medication versus insulin. Defendant LMG is correct that a plaintiff cannot raise new claims in a pretrial memorandum or response to a motion for summary that were not pleaded in the complaint. *See Bridgeport Music Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (rejecting new legal theories in response to motion for summary judgment); *Prunty v. Wilson*, No. 93-3939, 1994 U.S. App. LEXIS 6075, at *2-3 (6th Cir. Mar. 21, 1994) (new claims asserted in motion for summary judgment rejected). However, the record shows that Plaintiff did not pursue **any** of the grievances he filed beyond the initial filing. Therefore, even if the Court were to consider his broader claims based on inadequate treatment for his diabetes, Defendants would still be entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies.

Plaintiff also argues in his responses that his grievances made Defendants aware of his complaints and show that "they knew they had a problem and would work to fix it." However, exhaustion requires "strict compliance" with the grievance process provided by the prison. *Woodford*, 548 U.S. at 93-94. Exhaustion is "mandatory," *Jones v. Bock*, 549 U.S. at 211, and a court may not excuse a failure to exhaust or create exceptions to the requirement. *See Ross v. Blake*, 578 U.S. 632, 638-639 (2016). Accepting Plaintiff's argument that by simply filing a grievance an inmate puts an institution on notice would undermine the exhaustion requirement altogether.

Plaintiff also argues that some of his grievances were denied as non-grievable which removed his requirement to exhaust his administrative remedies. While the PLRA's exhaustion

13

requirement is a strict rule, the requirement is premised "'on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.'" *Doe 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (alteration in original) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). However, the grievance records show that none of Plaintiff's grievances were in fact denied as non-grievable. More specifically, Plaintiff argues in his responses that Grievance Numbers 6630, 6680, and 6681 were rejected as non-grievable. However, Grievance Numbers 6630 and 6681, both complaining of a delay in Plaintiff receiving his medication for neuropathy, were resolved as "Founded" (DN 92-2, PageID.656, 570), and Grievance Number 6680 was denied as "Unfounded." (*Id.*, PageID.661). Plaintiff argues that Grievance Numbers 6810, 6932, and 7046 were denied as "Unfounded or Denied – Non Grievable." However, those grievances were in fact denied as unfounded. (*Id.*, PageID.634, 632, 594).

Plaintiff also argues that Grievance Number 6682 was denied as non-grievable. However, nothing in that grievance indicates that it was denied as non-grievable. (DN 106-6, PageID.932). In the "Recommendations" section, the grievance counselor wrote "Per policy – grievance cannot contain vulgar/abusive language" and circled the words "the poor ineffient Dr or nurse" written by Plaintiff in the "Brief Statement of Grievance" section. (*Id.*) It is evident that the grievance was not in fact denied as non-grievable but rejected for containing "vulgar/abusive language." Whether or not Plaintiff agreed with that assessment, after the grievance was rejected, the most logical next step would have been for Plaintiff to modify his grievance and resubmit it.

The Sixth Circuit addressed a similar situation in *Richmond v. Settles*, 450 F. App'x 448, 457 (6th Cir. 2011). There, the inmate's grievance was returned to him because it improperly addressed multiple issues. *Id.* The court found, "[The plaintiff] did not correct and resubmit his

14

grievances nor is there any evidence in the record before this Court that he sought further appeals. [The plaintiff] has thus failed to properly exhaust his administrative remedies as to his conditions of confinement claim . . . ." *Id.* Similarly, in a previous case before this Court, an inmate's grievance was rejected because it requested inappropriate relief. *See Grimes v. Aramark Corr. Servs. Co.*, 5:10-CV-43, 2011 U.S. Dist. LEXIS 110438, at *5 (W.D. Ky. Sept. 26, 2011). The Court concluded, "Plaintiff did not complete the administrative review process as he neither resubmitted his grievance after it was rejected nor appealed it." *Id.*; *see also Chandler v. Hawkins*, No. 5:16-CV-00079-TBR, 2017 U.S. Dist. LEXIS 52740, at *5 (W.D. Ky. Apr. 6, 2017) (finding that inmate failed to exhaust his administrative remedies because he failed to "re-file his grievance in an appropriate manner[]").

To the extent Plaintiff had a mistaken belief that he could not take any further action after a grievance was rejected, it does not make the grievance process unavailable. *See Napier*, 636 F.3d at 222 (holding that exhaustion is required even if the inmate subjectively believes the remedy is not available, the state cannot grant the particular relief requested, or the inmate believes the procedure to be ineffectual or futile). There were further remedies available to Plaintiff after his grievance was initially rejected, and in fact the grievance records show that Grievance Number 6682 was ultimately denied as unfounded. (DN 92-2, PageID.652).

Plaintiff also argues that the grievance process was unavailable to him because the grievance responses were not returned to him or were returned to him late. However, the LMDC grievance procedures provide, "An inmate who does not receive a response within forty-five (45) days from the filing of the grievance shall be allowed to pursue his grievance to the next level of review (within five (5) working days)." (DN 95-1, PageID.815). Thus, there was another level of

15

grievance contemplated by the policy in this situation, and Plaintiff was required to utilize it. Plaintiff did not escalate any of his grievances to the next level.

For these reasons, the Court finds that Plaintiff failed to exhaust his administrative remedies before filing suit, and Defendants are entitled to judgment as a matter law.

V.

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendants' motions for summary judgment (DNs 92 and 95) are **GRANTED**. The Court will enter a separate Judgment dismissing the action and denying all pending motions as moot.

Date: June 12, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
　　 Counsel of record
4414.010